UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| VAL HOPKINS,           )<br>                              )<br>           Plaintiff,      )<br>                              )<br>    v.                       )<br>                              )<br>NANCY A. BERRYHILL, )<br>Acting Commissioner of Social Security, )<br>                              )<br>           Defendant.   )<br>_____) | Case No. EDCV 15-02423 AJW<br><br>MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of the defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for social security disability insurance and supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The procedural facts are summarized in the Joint Stipulation. [See JS 2-4]. In a January 23, 2014 written hearing decision that constitutes the Commissioner's final decision, the Administrative Law Judge ("ALJ") found that plaintiff retained the residual functional capacity ("RFC") to perform a restricted range of light work. The ALJ determined that plaintiff could not perform her past relevant work, but that she could perform alternative jobs available in significant numbers in the national economy. [JS 4; Administrative Record ("AR") 43]. Accordingly, the ALJ found plaintiff not disabled at any time from

1  August 1, 2010, her alleged onset date, through the date of the ALJ's decision. [AR 44].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (quoting Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

## Discussion

**Medical opinion evidence**

Plaintiff contends that the ALJ erred in evaluating the opinion of Robert Campbell Thompson, M.D., who testified as a medical expert during the November 6, 2013 hearing.

Dr. Thompson testified that he had reviewed the medical records submitted by the parties but had not examined or treated plaintiff. [AR 60]. Based on his evaluation of plaintiff's medical records, he described plaintiff's functional limitations as follows:

> Section 1 is lifting and carrying, I would say, frequently up to 10 pounds, occasionally 11 to 20 and not over 20 for both lifting and carrying. Section 2, sitting, standing and walking at one time, one hour each in an eight-hour workday, six hours total mixed between them. In other words, six altogether. There is no evidence that a cane is required for basic ambulation.

[AR 62].

The parties disagree about how Dr. Thompson's testimony should be interpreted. Plaintiff interprets

Dr. Thompson's testimony to mean that plaintiff can work six hours in a workday at a maximum, alternating between sitting, standing and walking. The Commissioner contends that the ALJ permissibly interpreted Dr. Thompson's testimony to mean that plaintiff was capable of performing "light work . . . sitting, standing and/or walking six hours out of an eight hour workday with the ability to stand and stretch or sit and stretch every hour estimated to take one to three minutes per hour." [AR 36].

The ALJ's interpretation is supported by the record. During the hearing, plaintiff's counsel inquired of Dr. Thompson:

> Q: Okay. And also, again, her experiencing that pain, [would plaintiff] be able to do this RFC every day?
>
> A: The basic definition of an RFC is what we would expect a person to do in a job which is nominally eight hours a day, five days a week.

[AR 65]. Dr. Thompson, then, made it clear that his testimony about plaintiff's RFC contemplated the ability to work eight hours a day, five days a week. Therefore, the ALJ rationally concluded that Dr. Thompson found plaintiff capable of six hours of sitting, standing or walking in an eight-hour workday, with the ability to alternate positions hourly. Since the ALJ's interpretation of Dr. Thomas's testimony was rational, it must be upheld. See Thomas, 278 F.3d at 954.

**Vocational expert's testimony**

Plaintiff contends that the ALJ did not carry her burden at step five of the sequential analysis because an unresolved conflict exists between the testimony of the vocational expert ("VE") and the physical demands of the alternative jobs the VE identified as those jobs are described in the Dictionary of Occupational Titles ("DOT").

At step five, the Commissioner has the burden of establishing, through the testimony of a VE or by reference to the Medical-Vocational Guidelines, that the claimant can perform alternative jobs that exist in substantial numbers in the national economy. See Gutierrez v. Colvin, 844 F.3d 804, 806 (9th Cir. 2016); Bruton v. Massanari, 268 F.3d 824, 827 n.1 (9th Cir. 2001). When using the testimony of a VE at step five, "the VE must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy." Osenbrock v. Apfel, 240 F.3d 1157, 1162-1163 (9th Cir. 2001).

The Commissioner "routinely relies" on the DOT "in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903. F.2d 1273, 1276 (9th Cir. 1990); see Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001) ("[T]he best source for how a job is generally performed is usually the Dictionary of Occupational Titles."). Should an "apparent or obvious" conflict arise between a VE's testimony regarding the claimant's ability to perform alternative jobs and the DOT's description of those jobs, "the ALJ must ask the [VE] to reconcile the conflict" and must determine whether the VE's explanation is reasonable before relying on the VE's testimony. Gutierrez v. Colvin, 844 F. 3d 804, 807, 808 (9th Cir. 2016); see Massachi v. Astrue, 486 F.3d 1149, 1153-1154 (9th Cir. 2007) ("[N]either the [DOT] nor the [VE] evidence automatically trumps when there is a conflict. Thus, the ALJ must first determine whether a conflict exists. If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT].") (internal quotation marks and ellipsis omitted).

In Gutierrez, the Ninth Circuit explained that "it's important to keep in mind that the [DOT] refers to 'occupations' and not specific jobs. 'Occupation' is a broad term that includes 'the collective description' of 'numerous jobs' and lists 'maximum requirements' of the jobs as 'generally performed.'" Gutierrez, 844 F.3d at 807 (quoting Social Security Ruling ("SSR") 00-4P, 2000 WL 1898704 at *2-3). The "maximum requirements" of an occupation are not present in every job within that occupation, and "tasks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about." Gutierrez, 844 F.3d at 808. The ALJ need only ask follow-up questions to clarify conflicts that are "obviously or apparently contrary to the [DOT], but the obligation doesn't extend to unlikely situations or circumstances." Gutierrez, 844 F.3d at 808. When the VE testifies about job requirements that are not addressed in the DOT, that testimony augments the DOT. "[T]o hold otherwise would mean that VEs always create conflicts with the DOT whenever they mention any of the multitude of things about a job not expressly addressed in the DOT." Laufenberg v. Colvin, 2016 WL 6989756, at *9 (C.D. Cal. Nov. 29, 2016).

During the hearing, the ALJ requested that the VE "testify according to the [DOT] or explain why . . . you are not testifying according to the [DOT] and state what your testimony is based on." [AR 79]. The VE agreed to do so. [AR 79]. The ALJ then asked the VE to assume the existence of a hypothetical person who, among other things, was limited to "occasional work overhead bilaterally," and the ALJ included that limitation

4

in her RFC finding. [AR 36, 40, 80]. The VE testified that the hypothetical person could not perform plaintiff's past relevant work but could perform the DOT occupations of information clerk, DOT job number 237.367-018; office helper, DOT job number 239.567-010; and small products assembler I, DOT job number 706.684-022. [AR 81]. The VE did not indicate that his testimony was anything other than consistent with the DOT, and the ALJ did not inquire further as to whether any inconsistency existed. [See AR 81-82]. The ALJ adopted the VE's testimony and found that plaintiff could perform all three of the occupations identified by the VE. [AR 44].

Plaintiff correctly asserts that the DOT classifies each of the jobs identified by the VE as requiring "frequent reaching," that is, reaching from one-third to two-thirds of the time. Plaintiff contends that because reaching means "extending the hands and arms in any direction," jobs that require frequent reaching assume the ability to reach frequently overhead as well as in other directions. Plaintiff argues that since the ALJ limited her to occasional overhead work bilaterally, an unresolved conflict exists between the VE's testimony that her RFC would not preclude performance of those jobs and the job information in the DOT.

Defendant contends that plaintiff's argument lacks merit because "overhead reaching" is not synonymous with "overhead work," which "can reasonably be interpreted to mean jobs performed almost constantly overhead . . . ." [JS 12-13 (quoting Cruz v. Colvin, 2013 WL 4082714, at *4 (C.D. Cal. Aug. 13, 2013) (rejecting the plaintiff's argument that a DOT requirement for "frequent reaching" in the three DOT jobs identified by the VE conflicted with the ALJ's finding that she was "precluded from performing overhead work"))]. Defendant contends that none of the jobs identified by the VE "appear to require overhead work," so there was no apparent or obvious conflict for the ALJ to resolve. [JS 12-13].

In the circumstances of this case, there is no apparent or obvious conflict between the VE's testimony and the DOT's job requirements requiring resolution by the ALJ. At least two district courts have held that a limitation involving "overhead work" is distinguishable from a limitation involving "overhead reaching" for purposes of determining whether a conflict exists between the VE's testimony and the DOT. In Cruz, the case cited by defendant, the ALJ precluded the claimant from "overhead lifting" and "overhead work." Cruz, 2013 WL 4082714, at *4. The district court reasoned that the ALJ

> most reasonably intended to preclude [the claimant] from doing jobs that regularly required lifting items or performing maneuvers above her head, not from ever reaching in an upward

5

direction. Had the ALJ intended to say that [the claimant] could perform no overhead "reaching," he likely would have simply inserted that limitation into the list of prohibited activities. . . . ALJs regularly prescribe limitations on various kinds of "reaching" or "overhead reaching." "Overhead work" can reasonably be interpreted to mean jobs performed almost constantly overhead, such as a window washer, tree trimmer, or wall washer.

Cruz, 2013 WL 4082714, at *4 (citing Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012) (noting that the ALJ's RFC limited the claimant to occasional overhead "reach[ing]"); Mondragon v. Astrue, 364 F. App'x 346, 348 (9th Cir. 2010) (same)). In Cruz, the court also found that the medical record did not support the inference that the claimant was "totally prohibited from performing any overhead reaching." Cruz, 2013 WL 4082714, at *5. The court further concluded that the DOT's narrative description of the jobs identified by the VE did not suggest that those jobs involved "overhead work" precluded by the claimant's RFC. Accordingly, no conflict existed requiring resolution by the ALJ. See Cruz, 2013 WL 4082714, at *5-*6. Another court followed Cruz in holding that there was "no conflict between an RFC limitation to no overhead work [and] a finding that an applicant can perform work requiring some overhead reaching when the record as a whole indicates that the ALJ intended that the [claimant] could not perform jobs that regularly required overhead maneuvering." Noble v. Colvin, 2016 WL 5219639, at *4 (D. Nev. Aug. 3, 2016) (citing Cruz, 2013 WL 4082714, at *4-*5), report and recommendation adopted, 2016 WL 5110483 (D. Nev. Sept. 20, 2016). In Noble, as in Cruz, the district court noted that the medical record did not support the inference that the claimant was totally unable to reach overhead, and that there was no conflict between the VE's testimony and the DOT. Noble, 2016 WL 5219639, at *4.

Cruz and Noble are analogous. In assessing plaintiff's physical RFC, the ALJ could have specified that plaintiff was limited to "occasional overhead reaching bilaterally," but instead she limited plaintiff to "occasional overhead work bilaterally," a difference that suggests a distinction in meaning. See Cruz, 2013 WL 4082714, at *4. Moreover, in assessing plaintiff's RFC, the ALJ relied chiefly on Dr. Thompson's testimony and on objective evidence regarding plaintiff's severe back and neck impairments (including degenerative disc disease of the lumbosacral spine and spondylolisthesis [AR 34]), rather than on any upper extremity impairments that might support an inference that the ALJ intended to limit plaintiff's overhead "reaching" rather than overhead "work." [See AR 35 (finding that plaintiff's right upper extremity pain and

bilateral hand numbness were not medically determinable severe impairments); AR 40 (noting that Dr. Thompson "acknowledged [that plaintiff's] impairments would cause neck and back pain, but there was no solid evidence of objective findings with the upper extremities")]. As in Cruz and Noble, the medical record in this case does not support the inference that by limiting plaintiff to "occasional overhead work bilaterally," the ALJ intended to limit plaintiff to "occasional overhead reaching bilaterally."

Cruz and Noble also are analogous because the DOT's narrative description of the jobs identified by the VE in this case does not suggest that those jobs require more than occasional overhead work bilaterally. In Cruz, the district court considered one of the DOT jobs identified by the VE in this case, small products assembler I, DOT job number 706.684-022 [AR 81] and concluded that the assembly job duties (performing "'any combination' of listed tasks on an assembly line, such as 'positioning parts in specified relationship to each other,' 'fastening parts together by hand or using handtools or portable powered tools,' 'frequently working at bench as member of assembly group assembling one or two specific parts and passing unit to another worker,' and 'loading and unloading previously setup machines'") did not indicate that overhead work was required. Cruz, 2013 WL 4082714, at *6 (brackets omitted) (quoting DOT job number 706.684–022, 1991 WL 679050). That reasoning is persuasive.

The DOT job description for one of the other two jobs identified by the VE, information clerk, DOT job number 237.367-01, states:

> Provides travel information for bus or train patrons: Answers inquiries regarding departures, arrivals, stops, and destinations of scheduled buses or trains. Describes routes, services, and accommodations available. Furnishes patrons with timetables and travel literature. Computes and quotes rates for interline trips, group tours, and special discounts for children and military personnel, using rate tables.

Nothing in that job description creates an inference that frequent (as opposed to occasional) overhead work is required. Similarly, the DOT states that the remaining job identified by the VE, the job of office helper, DOT job number 239.567-010, requires performing "any combination" of the following duties in a business office setting: furnishing workers with clerical supplies; opening, sorting, and distributing incoming mail; collecting, sealing, and stamping outgoing mail; delivering messages; collecting and distributing paperwork from one department to another; marking, tabulating, and filing articles and records, with possible additional

duties consisting of using office equipment, such as envelope-sealing machine, letter opener, record shaver, stamping machine, and transcribing machine; and delivering items to other business establishments. The DOT job description of an office helper permits the inference that some overhead work may be required, such as retrieving clerical supplies from overhead storage, but nothing in that job description suggests that more than occasional overhead work bilaterally is required.

Even if plaintiff could show that her limitation to "occasional overhead work bilaterally" is synonymous with or subsumes a limitation to "occasional overhead reaching bilaterally," she would need to do more to show that an apparent or obvious conflict exists in this case under Gutierrez. In that case, the Ninth Circuit observed that " [w]hile 'reaching' connotes the ability to extend one's hands and arms in any direction, not every job that involves reaching requires the ability to reach overhead." Gutierrez, 844 F. 3d at 808 (internal quotation marks omitted) (relying on the DOT and "common knowledge" to hold that no apparent or obvious conflict existed between the VE's testimony a claimant who could not reach above shoulder level with her dominant right arm could perform the DOT job of cashier, which requires "frequent reaching"); see Ballesteros v. Colvin, 2016 WL 3381280 at *15 (C.D. Cal. June 13, 2016) ("But just because the term 'reaching' includes extending the arms in 'any' direction – such as up, down, out, right and left, – that does not mean that a job that involves reaching necessarily requires extending the arms in all of those directions.").

Plaintiff has pointed to a potential conflict between the VE's testimony and the DOT's requirement of "frequent reaching" for the three jobs identified by the VE. Plaintiff has not, however, pointed to anything else in the DOT's job descriptions, any record evidence, or any other facts suggesting that those jobs could not be performed with only occasional overhead reaching bilaterally (but with the ability to frequently reach bilaterally in any other direction). See Gutierrez, 844 F. 3d at 808 ("[A]n ALJ must ask follow up questions of a vocational expert when the expert's testimony is either obviously or apparently contrary to the [DOT], but the obligation doesn't extend to unlikely situations or circumstances . . . [¶] Given how uncommon it is for most cashiers to have to reach overhead, we conclude that there was no apparent or obvious conflict between the expert's testimony and the [DOT].").

Since no apparent or obvious conflict exists between the VE's testimony and the DOT, the ALJ did not err in failing to further inquire into or resolve any conflict.

**Credibility finding**

Plaintiff argues that the ALJ made an inadequately supported negative credibility finding about her subjective symptoms. [JS 15-26].

Once a disability claimant produces evidence of an underlying physical or mental impairment that could reasonably be expected to produce the pain or other subjective symptoms alleged, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Absent affirmative evidence of malingering, the ALJ must then provide specific, clear and convincing reasons for rejecting a claimant's subjective complaints. Treichler v. Comm'r of Social Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014); Vasquez v. Astrue, 547 F.3d 1101, 1105 (9th Cir. 2008); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160-1161 (9th Cir. 2008). "In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." Bray v. Comm'r of Social Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (enumerating factors that bear on the credibility of subjective complaints); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989) (same). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. However, if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Plaintiff testified that she had chronic back and neck pain. She said that on a typical day she would "lay on her back and watch TV and that's pretty much it" due to pain, that she did few household chores, and that she did not drive. [AR 58, 73-74, 78].

The ALJ articulated specific, clear, and convincing reasons for finding plaintiff's subjective complaints less than fully credible. [See AR 37-38]. First, the ALJ concluded that plaintiff's subjective complaints of totally disabling neck and back pain, headaches, and depression were not fully corroborated by the objective medical evidence. [AR 38-39]. The ALJ is not prohibited from considering the presence or absence of objective evidence corroborating the alleged severity of a claimant's subjective complaints. The ALJ may not,

however, "reject a claimant's subjective complaints *based solely* on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell, 947 F.2d at 343 (emphasis added).

Second, the ALJ noted that plaintiff had been working full time within a year of the November 2013 hearing, after her alleged onset of disability in August 2010. In addition, testimonial and documentary evidence in the record indicated that she was "fired from two jobs in 2012 due to poor judgment, negligence resulting in the destruction of company intellectual property, learning the work flow too slow, falling behind with work, and insufficient skills set," and there was no evidence that plaintiff was terminated due to her allegedly disabling limitations. [AR 38, 264-265]. A letter in the record from Drew Paonessa dated September 12, 2012 states that plaintiff's employment with Morningstar Entertainment, LLC would be "officially terminated" the following day due to "negligence which resulted in the destruction of company intellectual property." [AR 264]. A letter in the record from Michael Pistello of Electus, LLC states that plaintiff was hired as a "Night Assistant Editor" in "July/August of 2012," but that she was terminated at the end of her third week of employment because she was not "learning our workflow fast enough" and "didn't have all the skills we hired her for," resulting in work "piling up," loss of the company's "time and money," and the decision to "hire somebody with a stronger skill set." [AR 39, 265]. During the hearing, plaintiff testified that she had been working full time from October 2012 to February 2013. She described a typical shift as one where she was unsupervised and could take frequent breaks to stretch or lay on her back. [AR 56]. Plaintiff also said that she made "a monumental mistake" that she believed led her employer to reduce her hours and eventually "let [her] go." [AR 54; see AR 55-57]. The ALJ rationally relied on the evidence of plaintiff's work history to reject the alleged severity of her subjective complaints. See 20 C.F.R. § 404.1529(c)(3), 416.929(c)(3) (stating that the Commissioner will consider information about a claimant's work record in assessing symptom severity); SSR 96-7p, 1996 WL 374186, at *5 (stating that adjudicator may consider "[s]tatements and reports from the individual and from . . . other persons about the individual's . . . prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work"); Bruton, 268 F.3d at 828 (holding that the ALJ did not err in discrediting the claimant's subjective complaints where the claimant "stated at the administrative hearing and to at least one of his doctors that he left his job because he was laid off, rather than because he was injured"); Gregory v. Bowen, 844 F.2d 664, 667 (9th Cir. 1988) (holding that evidence that the claimant's back problems had not

prevented her from working supported a finding that the claimant's back condition was not disabling); Copeland v. Bowen, 861 F.2d 536, 542 (9th Cir. 1988) (holding that the ALJ properly discredited the claimant's pain testimony because he had been laid off, albeit for medical reasons)).

The ALJ permissibly inferred that the absence of objective medical evidence corroborating the alleged severity of plaintiff's subjective complaints, her ability to work for a significant period of time during her alleged disability period, and her termination from those jobs for reasons other than her allegedly disabling limitations seriously undermined the alleged severity of her subjective symptoms. [AR 38]. Therefore, the ALJ articulated legally sufficient reasons for her adverse credibility finding.

## Conclusion

The Commissioner's decision is based on substantial evidence in the record and is free of legal error. Accordingly, the Commissioner's decision is **affirmed.**

**IT IS SO ORDERED.**

March 6, 2017

_____
ANDREW J. WISTRICH
United States Magistrate Judge